UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DALONNO JOHNSON, ) | |
| ) | Case No. 17 C 7828 |
| Plaintiff, ) | |
| ) | District Judge Mary M. Rowland |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| SOO LINE RAILROAD CO., d/b/a/ ) | |
| Canadian Pacific, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Soo Line Railroad Co. ("Defendant") has filed a Motion To Compel (D.E. 71) ("Mot.") seeking to compel Dalonno Johnson ("Plaintiff") to provide additional written discovery responses and to produce documents including certain of his federal and state tax returns, in this lawsuit alleging race discrimination in employment and retaliation claims under Title VII and 42 U.S.C. § 1981. Plaintiff alleges that while working in Defendant's Signal Department, he was subjected to racial discrimination and harassment that constituted a hostile environment and that led to his wrongful termination.

## INTRODUCTION

This memorandum opinion focuses solely on Defendant's request to compel Plaintiff to produce his federal and state income tax returns from 2014 (the last year of his employment with Defendant) to the present. Mot. at 8 & Ex. C (Document Request No. 27). Defendant asserts that Plaintiff's federal and state tax returns from the years 2014, 2015, 2016, 2017 and 2018 are discoverable because they are relevant to the issue of whether and to what extent Plaintiff mitigated his damages. Plaintiff has objected to this request as an intrusion upon his privacy, as a request

for privileged information, and as duplicative or cumulative. For the reasons set forth below, Defendant is ordered to produce his federal tax returns in his possession, for the calendar years 2015, 2016, 2017, and 2018, to the Court no later than September 10, 2019, for an *in camera* inspection so that the Court may determine which information from those materials, if any, must be produced to Defendant under an appropriate protective order.[1]

## DISCUSSION

### I. Discoverability of Tax Information

Tax information is not privileged from discovery. Rather, this information is subject to discovery under the proper analysis prescribed by Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992) (stating that it is well-settled that "[t]ax returns in the hands of a taxpayer are not privileged"). Although Section 6103 of the Internal Revenue Code forbids the IRS, with certain exceptions, to release tax returns to other government agencies, "the statute does not block access, through pretrial discovery or otherwise, to copies of tax returns in the possession of litigants; all it prevents is the IRS's sharing tax returns with other government agencies." *Commodity Futures Trading Comm'n v. Collins*, 997 F.2d 1230, 1232-33 (7th Cir. 1993), citing *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218-19 (1961). While "[s]ome courts have suggested that there is a heightened showing

---

[1] In addition to the tax return information, Defendant has moved to compel supplemental interrogatory responses and the production of additional documents. The Court is ruling on those issues in a separate text order (D.E. 82).

2

that must be made before tax returns are discoverable," such as a compelling need for the information and/or its unavailability from another source, "the Seventh Circuit has not adopted such a position" and has declined to impose a presumption against disclosure of tax returns in civil litigation. *Jackson v. N'Genuity Enters. Co.*, No. 90 C 6010, 2010 WL 4928912, at *2 (N.D. Ill. Nov. 29, 2010) (citing *Poulos*, 959 F.2d at 75.)

## II.     The Relevance of Tax Returns

Tax returns are relevant, for discovery purposes, where a litigant has put "the level and sources of his [or her] income at issue." *Poulos*, 959 F.2d at 74-75. In *Poulos*, the Seventh Circuit held that the district court did not abuse its discretion in ordering the production of the plaintiff's tax returns because the plaintiff's income was relevant to the amount of damages he claimed he incurred following his termination. *Id.* Similarly, in *Fields v. General Motors Corp.*, No. 94 C 4066, 1996 WL 14040, at *3-4 (N.D. Ill. Jan. 14, 1996), the district court granted the defendant's motion to compel production of the plaintiffs' tax returns where the plaintiffs' claims for lost profits over the defendant's alleged breach of contract placed in issue their financial injury and whether they mitigated that injury, and thus rendered their tax returns discoverable. *See also Shay v. Lifting Gear Hire Corp.*, No. 12 C 1687, 2012 WL 6680313, at *2 (N.D. Ill. Dec. 21, 2012) (overruling the plaintiff's objection to producing his "personal W-2 and tax return statements" in age discrimination suit on the ground that this information "bears on the issue of mitigation and, therefore, must be produced.") In *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515 (N.D. Okla. 2003), the court distinguished *Fields* and declined to order production of personal tax returns because the plaintiffs in *Evans* had not placed their income in issue, as they were not seeking damages in the form of lost income, but rather financial loss to the value of their home in a lawsuit against an insurer over coverage for losses from two fires that had damaged the home. 216 F.R.D. at 517-

3

18. No such distinction may be made here, because Plaintiff is seeking, in this employment discrimination matter, "back pay" as well as "lost wages" and "front pay." Complaint (D.E. 11) ¶ 16(f-g). As such, Plaintiff has put "the level and sources of his income at issue" such that his tax returns are relevant to calculate any damages. *Poulos*, 959 F.2d at 74-75.

In support of its request for Plaintiff's tax returns, Defendant did not cite any case authority concerning the discoverability of Plaintiff's tax returns. Defendant, in its motion, appeared to assume that relevance was the only hurdle it needed to clear, in that Plaintiff is said to have produced only tax "transcripts" for 2014-18 and W-2 forms for 2014 and 2015, and the need for "full and complete" copies of Plaintiff's "entire" tax returns is, "frankly, self-evident." Mot. at 9. "Obviously," Defendant argued in the Motion, Defendant is entitled to a "full copy to show the full extent of any income and benefits received from all sources." *Id.* Defendant's assertion that the relevancy was "self-evident" or "obvious[]" was not helpful, and the Court inquired further at oral argument, given the sensitivity of these types of documents, as noted further below. At oral argument on the Motion, Defendant stated that Plaintiff's tax returns for the years 2015-18 are relevant to show whether he mitigated his damages by seeking additional or "alternative" income, but counsel described the relevance of the 2014 tax year as covering only about three months at most, and Plaintiff has alleged he was terminated in January 2015.

In short, the Court finds that Plaintiff's federal tax returns from the calendar years of 2015, 2016, 2017, and 2018 are relevant to his claims and to Defendant's defenses in this matter. But Defendant made an insufficient showing of relevance of the information for the 2014 tax year.

## III. Proportionality of the Requested Tax Return Discovery

For purposes of discoverability under Rule 26, relevance is not the end of the inquiry. As noted above, parties may obtain discovery of any non-privileged matter that is "relevant to any party's claim or defense *and proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit.*" Fed. R. Civ. P. 26(b)(1) (emphasis added). The proportionality analysis requires the Court to consider what burdens might be imposed by an order compelling production of Plaintiff's tax returns, and whether those burdens are proportional to the needs of the case.

A litigant's compelled production of income tax returns is indeed burdensome. Our tax reporting and collection system depends heavily on taxpayers' reporting their income themselves, under an assumption that their tax returns will not ordinarily be turned over to third parties, at least not easily. While not privileged, "[i]ncome tax returns are highly sensitive documents; that is why the Commission cannot get the appellants' tax returns directly from the Internal Revenue Service. The self-reporting, self-assessing character of the income tax system would be compromised were they promiscuously disclosed to agencies enforcing regulatory programs unrelated to tax collection itself." *Collins*, 997 F.2d at 1233. In *Poulos*, the Seventh Circuit recognized that that trial courts have discretion in balancing the relevance of tax returns against the burdens compelled production imposes on the tax reporting and collection system. *Poulos*, 959 F.2d at 75. At the same time, *Poulos* declined to impose a "presumption against disclosure" of tax returns in civil litigation, choosing instead to leave district courts with the discretion to determine whether tax returns fall within the bounds of permissible discovery in individual cases. *See id.* *Poulos* stopped short of requiring an "additional overlay" before relevant tax records could be produced in discovery, but it was one of several courts that have expressed concerns about discoverability of tax returns based

5

on relevancy alone. *See Jackson*, 2010 WL 4928912, at *2 (citing cases). *Poulos*, *Collins* and *Jackson* were decided before Rule 26's 2015 amendments, which introduced the issue of proportionality with respect to discovery. We find that the attention these cases paid to the need to consider or balance the sensitivity of tax return information and the burden its production may impose on our tax reporting system is consistent with the Court's application of Rule 26(b)(1), and of its proportionality requirement, with respect to the request for Plaintiff's tax information here.

To determine whether discovery of Plaintiff's tax returns is proportional to the needs of the case, this Court must weigh Defendant's need for the returns with the burden that compelled production of income tax returns may impose on voluntary self-reporting of income under our tax system. To accomplish this, the Court must insist on *in camera* review of the federal tax returns. *See Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 813 (7th Cir. 1994) (holding that the district court did not abuse its discretion in denying the motion to compel production of the Defendant's entire tax returns, where the district court inspected the full returns *in camera* and concluded that the redacted information was immaterial); *Michas v. Health Cost Controls of Illinois, Inc.*, 96 C 5104, 1997 WL 467167, at * 2-3 (N.D. Ill. Aug, 12, 1997) (concluding that *in camera* review was appropriate for the court to analyze and assess discoverability of tax returns). We will do so for the years as to which Defendant established relevancy: 2015, 2016, 2017, and 2018. In addition, although Plaintiff's state tax returns (as well as his federal returns for those years) may be relevant to confirm the consistency of Plaintiffs' representations to separate tax authorities, or, perhaps, to discover whether there is some basis for further inquiry into any discrepancy between state and federal returns, those theories of relevancy are too marginal to survive the proportionality analysis. They are not squarely within the inquiry into whether plaintiff earned or obtained income to mitigate his damages, and they inject another layer of intrusiveness

and burden to Plaintiff's production of tax returns, even *in camera*. Accordingly, the Court is exercising its discretion to limit the *in camera* review and discoverability analysis to Plaintiff's *federal* income tax returns for 2015, 2016, 2017, and 2018.

## CONCLUSION

In sum, to resolve this discovery dispute promptly and in an orderly fashion, the Court today orders:

- As to federal income tax returns for the calendar years 2015, 2016, 2017 and 2018, Plaintiff's Motion To Compel is entered and continued until after the Court reviews those records *in camera*.

- Plaintiff is ordered to provide the federal income tax returns he possesses, for the foregoing tax years, to the Court (and only the Court, not to Defendant or its counsel) for delivery on or before September 10, 2019.

- Further, the Court orders Defendant to provide to the Court, also no later than September 10, the federal "transcript" and W-2 forms that Defendant said Plaintiff already has produced, so that the Court may evaluate them as a part of the balancing.

- The protective order that the parties are directed to negotiate (see D.E. 82) shall include a provision allowing any produced tax materials to be designated as "attorneys' eyes only" so they may be reviewed only by counsel for Defendant, and not Defendant's in-house attorneys or officers, executives, and other employees. If no such protective order is entered by September 26, 2019, the Court will enter its own order designating any produced tax returns as "attorneys' eyes only."

The relevancy of certain of Plaintiff's federal tax returns may well be "obvious" to Defendant, but their discoverability under Rule 26(b)(1) is neither "obvious" nor "self-evident" because the proportionality analysis under Rule 26(b)(1) must figure into the equation. As a part of the Court's considerable discretion over discovery matters, *see Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017), the Court must balance the Defendant's need for these documents with the burdens that producing such tax documents presents. The proportionality analysis required by the 2015 amendments to Rule 26 supplies a sufficient method to address the

7

concerns various courts, including the Seventh Circuit, have expressed about the "highly sensitive" nature of tax documents and the burden that compelled production of them can place on our tax reporting system, but without imposing an "additional overlay." *See Collins*, 997 F.2d at 1233; *Jackson*, 2010 WL 4928912, at *2.

Accordingly, the Court will conduct the *in camera* review and will issue an order after completing that review. If any tax return production occurs, it will be under an attorneys'-eyes-only protective order.

**SO ORDERED.**

ENTER:

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: August 27, 2019**