IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DALONNO C. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-7828 |
| | ) | |
| SOO LINE RAILROAD COMPANY, | ) | Judge Mary M. Rowland |
| D/B/A CANADIAN PACIFIC | ) | |
| RAILROAD, | ) | Magistrate Judge Gabriel M. Fuentes |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR SANCTIONS**

**Dated**: April 28, 2022

Respectfully submitted,

**DALONNO C. JOHNSON**

/s/ Ruth I. Major
One of His Attorneys

Ruth I. Major (ARDC No. 6205049)
The Law Offices of Ruth I. Major P.C.
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com

Plaintiff, Dalonno C. Johnson, by and through his attorneys, submits the following motion for sanctions pursuant to this Court's inherent authority and Federal Rules of Civil Procedure 37(b)(2)(c) and 60(d)(3):

## INTRODUCTION

For at least the last three years Defendant has meticulously drafted discovery responses and briefs filed in this matter all intentionally designed to persuade this Court, the Magistrate Judge and Plaintiff that it had fully complied with its discovery obligations, and that at the time of Plaintiff's termination there was no progressive discipline policy in effect. Recently Plaintiff's counsel uncovered a sworn affidavit filed by Defendant in another federal case confirming that at the time of Plaintiff's termination there was a progressive discipline policy in effect contrary to Defendant's representations throughout this matter. As more fully discussed below, Defendant's conduct, which is egregious and repeated, warrants severe sanctions.

## STANDARD

Among the "most prominent" of a district court's inherent powers is the contempt sanction, "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980). Severe sanctions are warranted where a party lies to the Court to receive a benefit and such sanction can include vacating the court's own judgment, *Sanders v. Melvin*, 25 F.4th 475, 481 (7th Cir. 2022), and default judgments, *Metro. Life Ins. Co. v. Est. of Cammon*, 929 F.2d 1220, 1224 (7th Cir. 1991). Federal Rule of Civil Procedure 37(b)(2)(c) also allows for discovery sanctions. *See generally Negrete v. Nat'l R.R. Passenger Corp.*, 547 F.3d 721, 723-24 (7th Cir. 2008) (affirming the lower court's dismissal of a case due to "repeated, willful efforts to hide evidence."). Prior to imposing more severe sanctions, such as default judgment, the court should

consider whether lesser sanctions are appropriate in light of the circumstances. *Id.* Where "the wrongdoing was so egregious and repeated" lesser sanctions are not warranted and the court is within its authority to impose severe sanctions including default judgment, which is also specifically permitted under Federal Rule of Civil Procedure 60(d)(3) based on fraud on the court. *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015).

## ARGUMENT

A default judgment is an appropriate sanction where a party has acted in bad faith by deceiving the court. *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d at 401 (collecting cases). In *Secrease,* the Seventh Circuit explained that where a litigant misleads the court about the facts of a case, "the effort produces an unjust result." *Id.* at 397. Where the misrepresentations are not the result of "clumsy lawyering", but rather a "continuous, contumacious course of conduct," such conduct "rises to the level of severity" rendering default judgment an appropriate remedy. *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018). "When a lawyer crosses the line into intentional wrongdoing, then more severe punishment is warranted, because our system of justice depends on the honesty and good faith of lawyers to abide by the rules of discovery." *Colyer v. City of Chicago, Gildardo Sierra*, No. 12 C 04855, 2016 WL 25710, at *13 (N.D. Ill. Jan. 4, 2016).

Here, Defendant and its counsel failed to produce the progressive discipline policy that was in effect at the time of Mr. Johnson's termination, repeatedly represented that "relevant" employment policies had been produced when that was untrue, argued before this Court that any notion that a progressive discipline policy was in effect at the time of Mr. Johnson's termination amounted to no more than a figment of Mr. Johnson's overactive imagination, calling it the "alleged" policy and suggesting it was "refuted by hard evidence," and was "ipse dixit". In fact, as discussed below, Defendant and Defendant's counsel Tracey Donesky were well aware that

Defendant's progressive discipline policy did in fact exist at the time of Plaintiff's termination and, if followed, would have provided Plaintiff with notice of his purported attendance transgressions and an opportunity to resign his signalman position as he had already accepted his conductor position. The end result, Plaintiff would have remained employed by Defendant.

This Court acknowledged in its ruling granting Defendant summary judgment on Plaintiff's claim related to the retaliatory discharge that it understood Defendant to be representing that there was no progressive discipline policy in place at the time of Plaintiff's termination, specifically finding "no such policy was in place at the time Defendant terminated Plaintiff." Defendant obviously intended to and did in fact mislead the Court about a relevant fact that would have resulted in the denial of Defendant's motion for summary judgment and, in the process, portrayed Plaintiff as the party trying to hoodwink the Court about the policy when the opposite was true. As discussed below, Defendant's conduct extended over several years and multiple filings with this Court. Accordingly, entry of an order vacating summary judgment in favor of Defendant and entering default judgment in Mr. Johnson's favor on all claims is warranted.

1. **Defendant has Continuously Evaded the Production of the Progressive Discipline Policy in Effect at the Time of Mr. Johnson's Termination Through Half-Truths and Misleading Representations to the Court and Plaintiff**

Throughout this litigation Defendant has concealed the existence of a progressive discipline policy that governed Defendant's conduct at the time of Mr. Johnson's termination. In discovery, Mr. Johnson repeatedly sought information about whether there was a "personnel manual" setting forth "personnel policy" and sought, *inter alia,* a "description of its contents" (**Ex. A**, Interrogatory No. 3, p. 8). Plaintiff also sought discovery concerning whether he was subjected to "progressive discipline" and requested information about whether Defendant had a "performance evaluation system" or "procedure". (**Ex. A**, Interrogatory No. 8, p. 17). Plaintiff also

3

requested information about whether he was ever "warned" or "counseled" concerning alleged unsatisfactory performance. (**Ex. A**, Interrogatory No. 12, p. 22). It was clear that Dalonno wanted information about Defendant's employee policies and that progressive discipline was an issue in the case, at least from Dalonno's perspective (and as indicated in this Court's own ruling on Defendant's summary judgment motion it is an issue from the Seventh Circuit's perspective as well).

Rather than answer the interrogatory by providing a description of the "contents" of its personnel policies, Defendant chose instead to produce documents as its response, which is permissible under the Federal Rules of Civil Procedure 33(d).[1] However, Defendant misled Mr. Johnson and the Court, repeatedly, by representing that it had produced responsive documents. In its first response, Defendant claimed it produced "individual employment policies" "related or relevant to the claims, allegations and/or defenses in this matter." (**Ex. A**, p. 8). Defendant even referenced "discipline" as a relevant topic in its answers (though now claiming discipline was not a relevant topic) when it indicated it was producing EEO policies "discussing, for example, hiring, **discipline**, . . ." (**Exhibit A**, Supplemental Answer May 28, 2020, p. 10) (emphasis added). Mr. Johnson kept pressing to ensure that he received any policy regarding discipline processes or policies, and in Defendant's response on November 18, 2019 to Interrogatory No. 3 Defendant wrote, "Questions for information pertaining to 'discipline' processes or policies are inapplicable to your interrogatory as the provision at issue relates to Rule 27 of the BRS CBA under which you

---

[1] Although Defendant chose to produce "responsive" documents rather than provide answers to Mr. Johnson's discovery requests, this does not excuse Defendant's failure to produce all relevant documents. Because Defendant chose to answer Mr. Johnson's interrogatories by producing documents, any such production is still under the purview of Rule 33 and must be answered "separately and fully... under oath." Fed.R.Civ.P.33(b)(3). Moreover, Federal Rule of Civil Procedure 37(a)(4) states that "evasive or incomplete disclosure[s], answer[s], or response[s] must be treated as a failure to disclose, answer, or respond".

were working at the time, a copy of which was previously produced to you and contains the rule under which your seniority and employment were terminated per Rule 27(e) due to your absence without proper authority between Monday November 25 and Monday December 2, 2013." (**Ex. A**, Supplemental Answer September 17, 2019, pp. 8-9). Mr. Johnson, a *pro se* plaintiff with no training in the law, attempted over and again to ensure he was receiving relevant policies and Defendant's response was to fail to produce the progressive discipline policy.

Plaintiff moved to compel the production of these basic documents normally produced in an employment case (e.g., discipline documentation for comparators and the discipline policy itself). As to Interrogatory No. 3, Defendant represented to Magistrate Judge Fuentes that it had "answered this interrogatory based upon the question asked and reasonable inquiry. To the extent there were other information responsive to such interrogatory, it would reasonably supplement as provided in the [Fed. R. Civ. P. 26(e)]". (ECF 214, pp. 3-4). When Plaintiff's motion to compel was then denied, he filed objections to the Magistrate Judge's ruling with this Court. In response to its compliance with Interrogatory No. 3 seeking the substance of the personnel policies, Defendant represented to this Court that it had "sufficiently answered this interrogatory and provided materials concerning **relevant** employment policies." (ECF 232, p. 8) (emphasis added). Defendant argued that "Magistrate Judge did not find error in CP's answer to Interrogatory No. 3 back in February 2020, and again found no error in CP's answer to this interrogatory in denying Plaintiff's October 2020 Motion here. Plaintiff fails to show any clear error." (Id.). Thus, in response to the request for documents about personnel policies, Defendant claims that it provided all relevant policies though repeatedly failing to produce a discipline policy.

At summary judgment, on the issue of whether Defendant's failure to follow its own progressive discipline policy established discrimination and retaliation, Defendant denied that it

5

had violated "any policy" claiming "rather, quite simply, once Johnson's unexcused absences exceeded the days in Rule 27(e), he forfeited his seniority and employment under that rule." (ECF 292, p. 4). In terms of whether there was a discipline policy in place at the time of Mr. Johnson's termination, Defendant called such a policy an "**alleged discipline policy**." (Id.) (emphasis added). In response to Mr. Johnson's testimony that there under Defendant's policies he was entitled to progressive discipline prior to termination, meaning at the point his absences were first deemed problematic, Defendant responded that "the discipline policy upon which Johnson relies was not in effect by December 2013, and thus it was inapplicable." (Id., p. 12). Finally, Defendant represented to this Court that Dalonno's termination was "not 'in violation of the company's policy'." Even as recently as April 12, 2022, just weeks ago, Defendant represented to this Court that "regardless of which disciplinary policy **(if any)** was in place at the time of Plaintiff's termination, any such policy is legally immaterial here because Plaintiff's dismissal arose under Rule 27(e) of the BRS CBA." (ECF 312, p. 14) (emphasis added). Defendant continues to lead the Court into believing that a progressive discipline policy was not in effect at the time of Mr. Johnson's termination, further writing, "This Court properly disregarded Plaintiff's misplaced reliance on the progressive discipline policy". (ECF 312, p. 12).

      Defendant's deceptive strategy in this case included withholding the discipline policy from Mr. Johnson, representing to Mr. Johnson and the Court that all relevant policies have been produced, representing to the Court that the policy Mr. Johnson had in his possession was an outdated policy, and failing to disclose to the Court the truth that a progressive discipline policy replaced the policy Mr. Johnson received and was in effect at the time of Mr. Johnson's termination. Defendant successfully urged the Court to reject Mr. Johnson's testimony that a progressive discipline policy was in place at the time, calling his testimony to that effect "say-so",

6

and citing to cases with parentheticals to suggest Mr. Johnson's claim that a progressive discipline policy was in place at the time of his termination was "refuted by hard evidence," and amounted to no more than "ipse dixit", (Dckt. 312, p. 12). Defendant argued that Mr. Johnson's testimony about progressive discipline was "not evidence," "especially when the **record clearly established otherwise**." (Dckt. 312, p. 12). Defendant worked tirelessly to persuade this Court to believe that the progressive discipline policy was terminated prior to Mr. Johnson's termination and that no similar progressive discipline policy was in its place, all of which is false.

2. **Defendant Intentionally Misled the Court in its Assertions that the Progressive Discipline Policy was Nonexistent, When in Fact, it did Exist**

In granting summary judgment to Defendant on the termination claim, the Court rightfully recognized that under controlling Seventh Circuit precedent "unexplained or systematic deviations from established policies can sometimes raise an inference of discriminatory intent." (Dckt. 298, p. 28). However, based on Defendant's repeated misrepresentations and half-truths to this Court, leading it to believe that there was no policy at the time of Mr. Johnson's termination, this Court, understandably, held "But **no such policy was in place** at the time Defendant terminated Plaintiff." (Id.) (emphasis added).

In fact, such a policy **was** in place at the time Defendant terminated Plaintiff's employment. Defendant just withheld it and repeatedly misled the Court into believing that no such policy was in place. This week Plaintiff came into possession of the actual policy—never produced by Defendant—that was in effect at the time of his termination in December of 2013. (**Ex. B**, Tab B). Mr. Johnson received it from a union representative. (**Ex. C,** Tab A). Upon receipt of the actual policy, Mr. Johnson's counsel was able to track the policy down, along with an affidavit from

7

Amanda Cobb[2], filed in a federal case in Minnesota. (**Ex. B, ¶ 4**). In her affidavit Cobb lays out her credentials to testify as to Defendant's progressive discipline policy (**Ex. B**, Tab C ¶ 1), testifies as to the policy Mr. Johnson relied on at summary judgment (Id., ¶ 4), and testifies as to the new policy that went into effect on March 17, 2013, was amended on June 15, 2013, and remained in effect past the termination of Mr. Johnson's employment (Id.). In addition, the attorney who presented Cobb's affidavit to the federal district court in Minnesota, Tracey Donesky, is the same lead counsel handling this matter. Whereas in this case, Defendant feigned ignorance that a policy it repeatedly failed to produce here even existed (and led this Court to believe its false representations), in the Minnesota case Defendant and counsel Donesky addressed the nonexistent policy at length, calling it "The U.S. Discipline Policy", explaining that "Under the discipline policy in effect at the time of Lemieux's discipline and dismissal, discipline could progress with a 5, 10, and/or 30-day suspension, followed by dismissal." (**Ex. B**, Tab D, p. 6). The Minnesota brief even confirms, as Mr. Johnson testified, that a progressive discipline policy was in existence at all times throughout 2013 (under both the new and the old policy), which includes the day Mr. Johnson called off work because of his car problems and the days that followed, and provided for "coaching and/or progressive discipline" so long as the "gravity" of the situation did not contraindicate such remediation. (Id., fn. 2). The Minnesota brief was filed on March 30, 2018, prior to the time discovery in this case commenced, yet no mention was made of the progressive discipline policy by Defendant and Defendant never produced the policy.

The progressive discipline policy in effect at the time of Mr. Johnson's termination (**Ex. B**, Tab B, hereinafter referred to as the "Progressive Discipline Policy"), at page 1, specifically

---

[2] Cobb, a Human Resources manager, was among the few people Mr. Johnson requested to depose after receiving the motion for summary judgment. Defendant objected and prevailed and Mr. Johnson was not allowed to depose her.

provides, "Infractions **will be dealt with using progressive discipline**, unless they warrant outright dismissal". (emphasis added). The Progressive Discipline Policy further provides, **"Note: For attendance related cases the Company will assess record suspensions only."** (Id., emphasis in original). Attendance related problems are handled only with record suspensions so that the employee will be on notice of the issue and correct the problem. The Progressive Discipline Policy specifically states:

> "Q7. Why are attendance related cases handled only with a record suspension?
>
> A. Attendance cases involve employees who are missing work. Using a record suspension means that **they will not miss more**."

(**Ex. B**, Tab B, p. 4) (emphasis added).

This new evidence, at all times in Defendant's possession but never produced to Plaintiff, shows Mr. Johnson was entitled to progressive discipline and coaching when Defendant first determined he was in violation of any Rules and that doing so would have allowed Mr. Johnson to "not miss more" work, in this case through resigning his position given he had already accepted the conductor position he previously held. Defendant's failure to comply with its own policy, and rather create and hold disciplinary notices that could have given Plaintiff notice so that he would not "miss more" work as per its own policy, is evidence of retaliation and discrimination. There is simply no excuse for the repeated violations of the letter and the spirit of the Federal Rules of Civil Procedure and the dishonest conduct of Defendant and its counsel. Accordingly, a default judgment in favor of Mr. Johnson is warranted in light of Defendant's brazen disrespect for the judicial process and this Court and the unfair advantage such conduct had on Plaintiff, a *pro se* plaintiff.

**WHEREFORE**, for the foregoing reasons, Dalonno C. Johnson respectfully requests the Court to grant his motion for sanctions and (1) vacate the partial summary judgment entered in favor of Defendant, (2) enter a default judgment in favor of Plaintiff Dalonno C. Johnson on all claims, (3) award Plaintiff attorney's fees associated with all efforts to obtain the progressive discipline policy in this matter and for the services performed in prosecuting this motion, (4) set the case for trial on damages, and (5) award such other relief as this Court deems fair and just.