UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dalonno C. Johnson, <br><br> Plaintiff, <br><br> v. <br><br> Soo Line Railroad Company, d/b/a Canadian Pacific Railroad, <br><br> Defendant. | Case No. 17-cv-7828 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dalonno Johnson claims that his former employer, Defendant Soo Line Railroad Company d/b/a Canadian Pacific Railroad, violated Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by terminating him due to his race, subjecting him to harassment based on race, and retaliating against him for complaining about racism in the workplace. In February 2022, the Court, ruling on Defendant's motion for summary judgment, granted summary judgment on all but Plaintiff's Section 1981 claim based on a hostile work environment. [298].

Before the Court are the following motions: (1) Defendant's motion for reconsideration [302]; (2) Defendant's motion for certificate of appealability [304]; (3) Plaintiff's motion for reconsideration [307]; (4) Plaintiff's motion to strike [314]; and (5) Plaintiff's motion for sanctions [317]. For the reasons explained below, the Court denies each motion.

1

**I.    Background**

The Court presumes familiarity with its summary judgment opinion [298] and thus briefly only revisits the procedural history in this case. Plaintiff originally brought Title VII and Section 1983 claims for color, national origin, and race discrimination, and for retaliation.

The Court granted summary judgment to Defendant on Plaintiff's Title VII claims as time-barred. This Court also granted summary judgment to Defendant on Plaintiff's Section 1981 claim based on the theory that Defendant terminated him because of his race. On this theory, this Court found that Plaintiff could not demonstrate a *prima facie* case under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) because Plaintiff did not identify a similarly-situated comparator who received more favorable treatment and because Defendant offered a non-pretextual, legitimate reason for terminating Plaintiff. The Court also found that under *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the evidence as a whole was insufficient to create a question of fact as to whether Defendant terminated Plaintiff because of his race.

This Court additionally granted summary judgment to Defendant on Plaintiff's retaliation claim because Plaintiff did not offer sufficient evidence that he engaged in a statutorily protected activity nor that any complaints he made to his employer caused his termination. Finally, this Court denied summary judgment on Plaintiff's hostile work environment theory under Section 1981, finding that questions of fact

remained as to whether Plaintiff experienced severe or pervasive harassment while working for Defendant.

## II. Motions to Reconsider

The Court first considers the parties' competing motions for reconsideration. To prevail on a motion to reconsider, the movant must establish "a manifest error of law or fact or present newly discovered evidence." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (quoting *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011)); *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). "A manifest error is not demonstrated by the disappointment" of the losing party; instead, there must be a showing of the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Consequently, in light of this "heavy" burden, motions to reconsider are rarely permitted and generally disfavored. *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911−12 (N.D. Ill. 2015).

### A. Defendant's Motion for Reconsideration

Defendant argues that this Court erred in denying summary judgment on Plaintiff's hostile work environment claim. [303]. Specifically, Defendant argues the evidence—which consisted of four remarks—failed to demonstrate that Defendant experienced severe or pervasive harassment. Defendant cites various Seventh Circuit cases, advocating that evidence of isolated and offhand comments do not withstand summary judgment.

This Court, however, already considered these cases, but determined, based on its review of Seventh Circuit jurisprudence, that Plaintiff pointed to sufficient evidence to submit whether his harassment was "severe or pervasive" to the jury. Specifically, Plaintiff's evidence included: (1) a manager calling him a "cold, wet little brown turd"; (2) the same manager calling Plaintiff and another black coworker "lazy" when they were on breaks; (3) a crew foreman telling him and another coworker they "look like little monkeys working"; and (4) the same crew foreman calling Mexicans a "disgrace to humanity." [298] at 31. The first and third of these incidents involve racially toxic language directed at Plaintiff from Defendant's managers. Courts treat a "supervisor's use of racially toxic language in the workplace as much more serious than a co-worker's." *Gates v. Board of Educ. of the City of Chicago*, 916 F.3d 631, 638 (7th Cir. 2019). This is "particularly true when supervisors address these derogatory and humiliating remarks directly to the employees in question." *Id*. A reasonable jury could find that these two comments alone created a hostile work environment.

Defendant argues that this Court erred by considering Plaintiff's "self-serving supplemental declaration" that claimed that the crew foreman directed the "monkeys" remark to his coworker *and* to him because Plaintiff provided no such testimony at his January 2020 deposition. [303] at 7. Not so. The term self-serving must "not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). Plaintiff properly presented his evidence through his declaration to supplement the record, and the Court properly considered such

4

evidence. The sham affidavit doctrine does not apply here, contrary to Defendant's contention, *see* [303] at 7, because Plaintiff did not testify inconsistently in his deposition. *See James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) ("In this circuit the sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony."). As Defendant itself concedes, Plaintiff testified in his deposition that he believed the comment was about him, in addition to the coworker to which the comment was directed. [303] at 7 n.2. And even if the "monkeys" comment were not directed at him, that would not entitle Defendant to summary judgment. *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 902 (7th Cir. 2018) ("Comments made to non-plaintiff co-workers carry less weight in the evaluation of a hostile environment claim, but they are not irrelevant.").

Defendant also argues that the Court failed to consider that it put forth "record facts and argument" establishing that Plaintiff's hostile work environment claim failed for other reasons. Specifically, Defendant argues that the Court did not consider that some of the remarks were not racial in nature. [303] at 10. The Court did consider the argument and rejected it because at least two of the comments—the one involving "monkeys" and the "little brown turd" were clearly racial in nature. Defendant also argues that the Court failed to address another element of Plaintiff's hostile work environment claim—a basis for employer liability. [303] at 10–11; *see* [298] at 30 (listing an element of a hostile work environment claim as "basis for employer liability"). The Court did not address this argument because Defendant did

5

not raise it as a basis for summary judgment. *See* [250] at 10–12. A party "waives arguments that it does not present in its initial motion for summary judgment or in its response." *Bankdirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15-CV-10340, 2017 WL 1196917, at *5 (N.D. Ill. Mar. 31, 2017) (quoting *Anderson v. City of Wood Dale*, No. 93 C 425, 2001 WL 477158, at *4 (N.D. Ill. May 3, 2001)). And reconsideration "is not an appropriate forum for . . . arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

The Court likewise rejects Defendant's belated attempt to dismiss the hostile work environment claim as time-barred. *See* [303] at 14–15. This is a new legal theory that Defendant could have, but did not, raise during the pendency of its motion for summary judgment. A motion to reconsider is not the appropriate vehicle to introduce new legal arguments. *Caisse*, 90 F.3d at 1270.

For these reasons, the Court denies Defendant's motion for reconsideration [302].

### B.  Plaintiff's Motion for Reconsideration

Plaintiff also moves for reconsideration of certain aspects of this Court's summary judgment order. [307]. None of Plaintiff's arguments are appropriate for reconsideration.

Plaintiff argues that this Court erred by finding that conductors Richard Vock and Will Copeland were not similarly situated comparators. [308] at 4–6. Plaintiff complains that this Court ignored that Defendant required assistant signalmen like him and conductors like Vock and Copeland to be familiar with the General Code of

Operating Rules (GCOR), and thus, all three gentlemen were subject to the same performance standards. The Court found, however, that Vock and Copeland nonetheless were not proper comparators because unlike Plaintiff, they were not subject to the BRS CBA pursuant to which Defendant terminated Plaintiff. [298] at 24. Plaintiff also contends that this Court ignored that Robert Johnson acted as the ultimate decisionmaker as to all three workers' disciplinary actions. [308] at 6, 7–8. Yet there is no evidence of this fact. Rather, the undisputed evidence shows that Justin Meyer made the ultimate decision to terminate Plaintiff. *See* [298] at 26; [254] ¶ 3. Nor did this Court commit error in deeming Brian Kopca an improper comparator, as he resigned prior to his disciplinary hearing; he was not terminated like Plaintiff. *See* [298] at 24–25. Plaintiff offers no new argument regarding Kopca that would warrant reconsideration.

Plaintiff also takes issue with this Court's ruling that there is no evidence that Defendant did not honestly believe that Plaintiff violated Section 27(e) of the BRS CBA. [308] at 8. Plaintiff points to evidence that two witnesses at his CBA hearing testified that they believed Plaintiff's conduct did not violate Rule 27(e). *Id.*; *see* [282] ¶ 22. This evidence does not suggest discriminatory motive, only (at most) that Defendant ultimately may have made an error in interpreting Rule 27(e). This Court reiterates, however, that Defendant's construction of Section 27(e), however, wrongful, is not illegal and does not alone suggest that Defendant's termination process "was used to hide racial discrimination." [298] at 27. Nor does Defendant's purported failure to follow a progressive discipline policy qualify as a basis for

7

reconsideration. *Contra* [308] at 10–11. As explained in the summary judgment opinion, although Plaintiff argued that Defendant's failure to follow a progressive discipline policy demonstrated pretext, the only evidence of such a policy in the record was of a policy that was not in effect at the time Defendant terminated Plaintiff. [298] at 28. Plaintiff offers no basis for this Court to reconsider its findings on the policy.

This Court also finds no error with its opinion dismissing Plaintiff's retaliation claim. As discussed in its summary judgment order, among other things, Plaintiff failed to raise a triable issue on the element of causation because there is no evidence that Meyer (the ultimate termination decisionmaker) had any knowledge of Plaintiff's alleged complaints of race discrimination, and rather, Defendant possessed legitimate reasons to take adverse action—Plaintiff's unexcused absences. [298] at 36, 40. Plaintiff's disagreements with this Court's fact and evidentiary findings again are not appropriate for reconsideration. Plaintiff complains, for instance, that the Court disregarded evidence of a voicemail transcript that proves that his supervisor, Edward Harwick, knew about his complaints of race discrimination. [308] at 9–10. But the Court properly disregarded the voicemail transcript because Plaintiff had not authenticated it under Federal Rule of Evidence 901. [298] at 37–38. In moving to reconsider, Plaintiff still does not attempt to authenticate the recording, promising merely that he will do so at trial. [308] at 15. This remains insufficient to establish that the transcript is what it purports to be. This Court also explained that even if the transcript sufficed to show that Harwick knew of Plaintiff's race discrimination complaints, Plaintiff nonetheless failed to demonstrate that Harwick's involvement

8

in Plaintiff's termination could establish retaliation under a cat's paw theory. [298] at 38–39. There is no evidence that Harwick himself harbored illegal animus toward Plaintiff, nor evidence that Harwick's input proximately caused Plaintiff's termination. *Id.* Plaintiff raises no legal or factual error that changes these conclusions.

For these reasons, this Court denies Plaintiff's motion for reconsideration [307].

### III. Defendant's Motion to Certify an Interlocutory Appeal

This Court next considers Defendant's motion to certify an issue for interlocutory appeal [304]. Defendant moves to certify the following question: Can (three or) four isolated remarks—one of which was undisputedly non-racial in nature, two others of which were not directed at Plaintiff—be legally sufficient to raise a genuine material question of fact to withstand summary judgment on the severe or pervasive element of a hostile work environment claim? [305] at 2.

This Court denies Defendant's motion. 28 U.S.C. § 1292(b) permits an interlocutory appeal only when four criteria are present: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). Unless "*all* these criteria are satisfied," the Court cannot certify an order for immediate appeal. *Id.* There is no question of law here. In this context, "question of law" means a "pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz*, 219 F.3d at 676–77. Generally, a pure question of law goes to the meaning of a statutory or

9

constitutional provision, regulation, or common law doctrine. *Feit Elec. Co., Inc. v. CFL Techs., LLC*, No. 13-CV-9339, 2021 WL 4061741, at *1 (N.D. Ill. Sept. 7, 2021) (citing *Ahrenholz,* 219 F.3d at 676). Defendant fails to present a pure question of law. Rather, Defendant's proposed certified question asks whether, in light of the evidentiary record, Plaintiff had presented enough facts to submit his hostile work environment claim to the jury. This would require the court of appeals to study the record; it is not something the court "could decide quickly and cleanly." *Ahrenholz*, 219 F.3d at 676–77. Indeed, the denial of summary judgment is "a paradigmatic example of an interlocutory order that normally is not appealable." *Ahrenholz*, 219 F.3d at 676. Because Defendant does not present a pure question of law, the Court denies Defendant's motion to certify an interlocutory appeal [304].

### IV. Plaintiff's Motion to Strike

Plaintiff moves to strike, or in the alternative, to submit additional argument directed at Defendant's attempt, through its motion for reconsideration, to dismiss Plaintiff's remaining Section 1981 claim on statute of limitations grounds. [314]. As discussed above, the Court finds Defendant's Section 1981 timeliness arguments improper for the purposes of a motion for reconsideration, as Defendant had failed to raise them during the pendency of the motion for summary judgment. Therefore, this Court denies as moot Plaintiff's motion to strike [314].

### V. Plaintiff's Motion for Sanctions

Plaintiff moves for sanctions, arguing that Defendant failed to produce a progressive discipline policy in effect at the time of Plaintiff's termination. [317].

10

In the Court's summary judgment order, the Court acknowledged that Plaintiff argued that the Court could infer pretext based on Defendant's failure to follow its own progressive discipline policy, which Plaintiff identified as the "Positive Behavior & Performance Development Policy." [298] at 28. The Court concluded, however, that the record showed that the policy Plaintiff identified was discontinued by March 17, 2013 and thus was not in effect at the time Defendant terminated Plaintiff in December 2013. *Id.*; *see also* [278]; [295] ¶ 5. Given this fact, the Court concluded that Defendant's failure to follow a policy not in effect could not raise an inference of pretext. [298] at 28.

In moving for sanctions, Plaintiff claims that he recently came into possession of a document—never produced by Defendant—reflecting a progressive discipline policy that was in effect in December 2013, when Defendant terminated him. [317] at 8–9. Plaintiff complains that Defendant acted in bad faith by refusing to turn over this policy during discovery. But Defendant's position has always been that "discipline policies are not applicable in this case because -- as has been repeatedly and consistently stated during the regular discovery period (now long passed) -- Mr. Johnson's employment ended as a result of the self-executing provision under Article 27(e) of the BRS Collective Bargaining Agreement under which he was working at the time." [277] at 4.

And, even after Plaintiff moved to compel progressive discipline policies, the Magistrate Judge denied this request. Indeed, after discovery closed in August 2021, Plaintiff moved to extend discovery and compel Defendant to produce written policies

11

that existed from January 1, 2013 through the present concerning progressive discipline or informal or formal coaching. [276] at 4–5. The Magistrate Judge denied this motion, emphasizing that discovery was closed and that Plaintiff had never specifically asked for production of such documents when discovery was ongoing, despite many opportunities to do so. [278]. The Magistrate Judge also gave Plaintiff the opportunity to appeal his order, stating: "If more discovery is to be ordered in this case now, it will have to be by the district judge on a timely objection to this order." *Id*. Plaintiff never availed himself of the opportunity to object to the Magistrate Judge's order and to request additional discovery from this Court. Plaintiff therefore cannot now complain that Defendant's refusal to produce such documents is sanctionable. This Court denies Plaintiff's motion for sanctions [317].

## VI. Conclusion

For the reasons explained above, this Court denies Defendant's motion for reconsideration [302], denies Plaintiff's motion for reconsideration [307], denies Defendant's motion for certification [304], denies as moot Plaintiff's motion to strike [314], and denies Plaintiff's motion for sanctions [317].

E N T E R:

Dated: January 17, 2023

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge